Filed 8/21/23  P. v. Perez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>MAXAMINA PEREZ,<br><br>        Defendant and Appellant. | C096462<br><br>(Super. Ct. No. 17FE022755) |

Defendant Maxamina Perez, who worked as a manager at the recycling processor Recycle Service Alliance, Inc. (RSA), pleaded guilty to charges related to falsifying weight tickets for the materials RSA received from recycling centers.  As a result of the false weight tickets, RSA was overpaid by the Department of Resources Recycling and Recovery (CalRecycle) for nearly three years.  On appeal, she argues the trial court erroneously ordered her to pay $312,945.67 in costs as part of her direct victim criminal restitution order under Penal Code section 1202.4.[1]  She further argues her counsel was

---

[1]    Undesignated statutory references are to the Penal Code.

ineffective by failing to object to these costs.  Finally, defendant argues she is entitled to credit for any direct victim restitution payments made by RSA and asks us to modify the judgment to reflect that the direct victim restitution is joint and several.  We will modify the judgment to reflect that the direct victim restitution is joint and several, and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*1.  Relationship Between CalRecycle and Recycling Processors Like RSA*

Under the California Beverage Container Recycling and Litter Reduction Act (Pub. Resources Code, § 14500 et seq.), distributors of beverage containers pay a refundable deposit (called a California refund value or CRV) to CalRecycle for each beverage sold or offered for sale.  (*Tomra Pacific, Inc. v. Chiang* (2011) 199 Cal.App.4th 463, 471 (*Tomra Pacific, Inc.*); see Pub. Resources Code, § 14560.)  The redemption payments are deposited into the Beverage Container Recycling Fund (Recycling Fund), which is managed by CalRecycle and used to pay its operating costs and "various fees and grants for curbside collection programs, recycling centers, material processors, and other participants in the recycling stream."  (*Tomra Pacific, Inc.*, at p. 471; see *id.* at p. 474; Pub. Resources Code, § 14580, subd. (a).)  The CRV is ultimately passed on to the consumer, who can later recover this deposit by returning an empty beverage container to a certified recycling center.  (Pub. Resources Code, § 14572, subd. (a)(1); *Tomra Pacific Inc.*, at p. 471.)

Recycling centers, in turn, can then sell these empty containers to certified recycling processors such as RSA, which reimburse centers for any CRV paid plus a processing payment and an administrative fee.  (Pub. Resources Code, §§ 14573.5 & 14518.)  The payments to centers are based on its DR-6 shipping report (DR-6), which lists the commodity type and redemption weight.  The recycling processor then weighs the load and issues a weight ticket, which is attached to the DR-6.

2

After paying the center, a recycling processor may obtain reimbursement plus an administrative fee from CalRecycle, which pays the processor from the Recycling Fund. (Pub. Resources Code, § 14573; *Tomra Pacific, Inc., supra*, 199 Cal.App.4th at pp. 471, 474.) The recycling processor's DR-7 reimbursement form (DR-7) includes the relevant DR-6 forms from the centers.

## 2. *RSA's and Defendant's Actions to Defraud CalRecycle*

From 2012 through 2015, RSA falsified weight tickets of material it received from recycling centers. RSA did this by manually entering weight amounts, rather than relying on the truck weight scale that automatically created a weight ticket. RSA also created reprinted weight tickets, which were edited versions of a regular ticket. As a result of submitting these invalid weight tickets, RSA received additional payments from CalRecycle in the tens of millions of dollars.

In addition to personally falsifying weight tickets, defendant also trained and instructed other employees to do the same. In exchange, defendant received approximately $300,000 between January 2012 and August 2017.

In May 2015, CalRecycle employees conducted an onsite investigation of RSA. Although no invalid weight tickets were recorded while the investigators were there, multiple fraudulent tickets were created after the investigators left for the day.

The Department of Justice searched RSA's offices in May 2016. Agents found handwritten notes instructing employees on how to create manual weight tickets.

## 3. *Plea and Sentencing*

In September 2021, defendant pleaded guilty to five counts of committing fraud in the recovery of recycling payments (Pub. Resources Code, § 14591, subd. (b)(1)), five counts of forging and falsifying public records or documents (§ 115, subd. (a)), two counts of offering a forged document as genuine (§ 132), two counts of falsifying documents to be used as evidence (§ 134), and one count of perjury (§ 118). As part of her plea, defendant agreed to a seven-year sentence in state prison, with execution

3

suspended pending successful completion of probation.  She also agreed to pay CalRecycle restitution in an amount to be determined by the trial court.  Additional related charges against defendant were dismissed with a *Harvey* waiver.[2]

RSA also pleaded guilty to one count of committing fraud in the recovery of recycling payments.  (Pub. Resources Code, § 14591, subd. (b)(1).)  Per the parties' agreement, the trial court ordered RSA to pay a $1 million fine and $33 million in victim restitution to CalRecycle.

Later that month, the trial court sentenced defendant to an aggregate term of seven years in state prison, with the execution of the sentence suspended pending the successful completion of five years of probation.  The court also imposed a $10,000 restitution fine (§ 1202.4, subd. (b)(1)) and a corresponding $10,000 probation revocation fine (suspended unless probation is revoked) (§ 1202.44).  The court also ordered defendant to pay restitution to CalRecycle in an amount to be determined by the court and set a hearing.

*4.  Victim Restitution Hearing and Order*

The prosecution sought approximately $80 million in restitution for CalRecycle, which it argued represented the total amount of the 44,501 fraudulent weight tickets submitted to CalRecycle, even though the actual damages for the increased weight was only $18.7 million.  In support of its argument, the prosecution filed a declaration from Jeffrey A. Diamond, a senior staff counsel employed by CalRecycle who represented CalRecycle in the administrative enforcement case against RSA, defendant, and another former RSA employee.  Diamond detailed how CalRecycle had investigated 2,727 fraudulent DR-7s from RSA, which were based on 44,555 DR-6s and 44,555 fraudulent weight tickets.  Defendant typically added an additional 200 pounds to each fraudulent

---

[2]     *People v. Harvey* (1979) 25 Cal.3d 754.

4

ticket, resulting in 21.6 million pounds of added weight. Per Diamond, this was the largest fraud case ever prosecuted by CalRecycle. Diamond stated that, in addition to the total damages, there was $1,488,331.35 in interest owed to the Recycling Fund and $312,945.67 for costs and fees.

Defendant responded that the prosecution had failed to show the Recycling Fund had suffered any damages because it could not establish that RSA (or defendant) received any funds to which it was not entitled. Defendant cited an audit performed on behalf of RSA that showed CalRecycle only paid RSA the amounts that RSA had paid to the recycling centers.

During the April 2022 restitution hearing, the prosecution stated it did not contend that RSA had received reimbursement above what it had paid to the recycling centers. Still, the issue was irrelevant because RSA had submitted falsified records and was the "intermediary" for the recycling centers to get paid for materials that were either not submitted or were ineligible for reimbursement. Moreover, RSA was compensated for its "middleman" efforts. Diamond testified that, even if a portion of the falsified weight tickets were legitimate, the entire ticket was tainted by the crime of adding weight, especially since it was at this point impossible for CalRecycle to try to ascertain which portion of the weight ticket was valid. Diamond acknowledged CalRecycle would also seek reimbursement in any administrative action, but there would be no double counting.

In May 2022, the trial court ordered defendant to pay CalRecycle direct victim restitution as follows: (1) $18,713,554.06 for the actual economic harm caused by the fraudulent weight alterations; (2) $1,871,355.40 in interest; and (3) $312,945.67 for costs and fees. With respect to the costs and fees award, the court reasoned that, as a public agency, CalRecycle had not been directly victimized for purposes of restitution for costs pursuant to section 1202.4. Instead, CalRecycle was entitled to the award because costs were recoverable pursuant to Public Resources Code sections 14591.3 and 14591.4. The court further noted that defendant had not objected to the costs request.

5

## DISCUSSION

### I

Defendant does not challenge the trial court's $18.7 million restitution award for CalRecycle's economic harm or the $1.9 million interest award. Instead, defendant contends the trial court erred in awarding $312,945.67 in costs and fees, arguing CalRecycle was not entitled to such reimbursement for investigative costs under *People v. Ozkan* (2004) 124 Cal.App.4th 1072 (*Ozkan*).[3] Defendant further argues the trial court erred in determining that CalRecycle was entitled to such costs pursuant to Public Resources Code sections 14591.3 and 14591.4 because those sections limit recovery of costs to administrative or civil actions, rather than criminal ones.

The People reply that defendant has forfeited the argument on appeal by failing to object to restitution for costs in the trial court. Citing *People v. Blackburn* (1999) 72 Cal.App.4th 1520 (*Blackburn*), defendant argues the rule of forfeiture does not apply where the sentence was unauthorized. (*Id.* at p. 1534.) In the alternative, defendant argues her trial counsel was ineffective for failing to object. (See *People v. Mai* (2013) 57 Cal.4th 986, 1009-1010 [a defendant claiming ineffective assistance of counsel must prove that their attorney's representation was deficient and that they suffered prejudice as a result].) Given that defendant is arguing a portion of the victim restitution was unauthorized, we turn to defendant's claims and find them meritless. (See *Blackburn*, at pp. 1533-1534.)

---

**3**     Defendant correctly notes that public entities like CalRecycle are not entitled to attorney fees under section 1202.4. (§ 1202.4, subd. (f)(3)(H) [permitting actual and reasonable attorney fees accrued by "a private entity"].) However, given the general presumption that a judgment is correct on appeal, we assume without deciding that the trial court's award was for investigative costs rather than attorney fees. (See *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 [a judgment challenged on appeal is presumed correct].)

As a preliminary matter, we note that Public Resources Code sections 14591.3 and 14591.4 only permit CalRecycle to recover investigative costs and fees in "any civil or administrative action." (Pub. Resources Code, § 14591.3; see also Pub. Resources Code, § 14591.4 [permitting CalRecycle to seek restitution for moneys illegally paid by the Recycling Fund plus interest, but not addressing investigative costs].) As such, these provisions are inapplicable in these criminal proceedings.

However, this does not end the inquiry, since section 1202.4, subdivision (f) requires a court to order the defendant to make restitution where a victim has "suffered economic loss as a result of the defendant's conduct." Section 1202.4 "requires victims to be fully reimbursed '*for every determined economic loss* incurred as the result of the defendant's criminal conduct' and contains an expressly nonexclusive list of reimbursable losses, '*including, but not limited to*:' economic loss such as '[w]ages . . . lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution.' " (*People v. Clapp* (2021) 62 Cal.App.5th 862, 867 (*Clapp*), quoting § 1202.4, subd. (f)(3), (f)(3)(E).) As courts have noted, " ' " ' " '[a] victim's restitution right is to be broadly and liberally construed.' " ' " ' " (*Clapp*, at p. 868.) Section 1202.4 defines " 'victim' " to include governmental agencies "when that entity is a *direct victim* of a crime." (§ 1202.4, subd. (k)(2), italics added; see also *People v. Torres* (1997) 59 Cal.App.4th 1, 3 (*Torres*) ["a defrauded government agency can be a victim entitled to restitution"].) We review for abuse of discretion a trial court's order regarding restitution for a governmental agency's investigative costs. (*Ozkan, supra*, 124 Cal.App.4th at p. 1075.)

Courts have made clear that, where a government entity is not a direct victim of the crime, it is not entitled to restitution for investigative costs. For example, in *Ozkan*, the defendant and his gas station business were involved in a scheme to sell regular gasoline as higher priced midgrade and premium gasoline. In addition to overcharging the public, the business failed to remit to the State Board of Equalization (SBE) the full

7

amount of sales tax collected on gasoline sold at the defendant's gas stations. The defendant eventually pleaded guilty to grand theft and filing false sales tax returns. (*Ozkan, supra*, 124 Cal.App.4th at p. 1074.) On appeal, the People argued the trial court erred in refusing to order restitution for the investigative costs of SBE and the Division of Measurement Standards, which enforces and certifies the quality of petroleum products. (*Id.* at p. 1075.) Although the appellate court ultimately agreed the agencies' investigative costs were recoverable pursuant to Business and Professions Code section 12015.5,[4] the court noted that public agencies were not generally directly " 'victimized' " for purposes of section 1202.4 "merely because they spend money to investigate crimes or apprehend criminals." (*Ozkan*, at p. 1077; see *id*. at pp. 1077-1078.)

Similarly, in *Torres*, the appellate court struck an award for restitution where sheriff's deputies investigating illegal drug trafficking had used county funds to buy illegal drugs from the defendant. (*Torres, supra*, 59 Cal.App.4th at pp. 4-5.) The court reasoned that law enforcement agencies investigating criminal activity were not direct victims for purposes of section 1202.4. (*Torres*, at pp. 4-5.)

However, where a government entity is a direct victim of a crime, courts have found the entity is entitled to restitution for investigative costs. For example, in *Clapp*, the defendant, a California Highway Patrol (CHP) officer, began collecting disability payments after being injured on the job. These payments came out of the budgets of CHP and the State Compensation Insurance Fund (SCIF). (*Clapp, supra*, 62 Cal.App.5th at p. 865.) After being investigated by CHP and SCIF, the defendant eventually pleaded guilty to charges related to disability fraud. (*Id.* at p. 866.) The trial court awarded restitution for (1) the payments the defendant fraudulently obtained and (2) CHP and

---

**4**     Business and Professions Code section 12015.5 provides that an order for recovery of investigative costs "shall" be imposed when a defendant is convicted of violating any of the portions of this division.

8

SCIF's investigative costs, which included over 1,800 hours in salary costs for both entities. (*Id.* at pp. 865-866.) On appeal, the defendant only challenged the restitution for investigative costs. (*Id.* at p. 865.) This court affirmed, reasoning that CHP and SCIF were entitled to such restitution since they were "both direct victims of defendant's fraud" given that they had both paid the defendant money he had fraudulently obtained from them. (*Id.* at p. 869; see *id*. at pp. 868-869, 873.)

We are persuaded this case is akin to *Clapp* rather than *Torres* or *Ozkan*. Unlike the various enforcement agencies seeking reimbursement for investigative costs in *Torres* and *Ozkan*, here CalRecycle did much more than merely investigate defendant's crimes. Similar to CHP and SCIF in *Clapp*, CalRecycle erroneously paid over $18.7 million from its Recycling Fund directly to RSA based on fraudulent weight tickets prepared by defendant and other employees. As previously noted, the Recycling Fund is managed by CalRecycle and used to pay CalRecycle's operating costs and various programs it runs, meaning CalRecycle suffered direct economic harm due to defendant's criminal actions. Defendant appears to acknowledge this harm, since, just like the defendant in *Clapp*, she fails to challenge on appeal the trial court's award of $18.7 million in restitution for economic harm. In sum, because CalRecycle is a direct victim of defendant's fraud, it was entitled to restitution for the investigative costs it incurred to uncover this fraud. Although the trial court did not state this rationale in issuing its direct victim restitution award, we will affirm because the trial court's restitution award was correct. (See *People v. Zapien* (1993) 4 Cal.4th 929, 976 [if the decision was correct on any theory of law applicable to case, it must be upheld on appeal even though trial court gave the wrong reason].)

Given our conclusions, we find no merit in defendant's argument that her attorney provided ineffective assistance in failing to object to the investigative costs award. (*People v. Ochoa* (1998) 19 Cal.4th 353, 463 [trial counsel's representation is not deficient "for failing to make meritless objections"].)

9

## II

Defendant next argues she is entitled to credit for any direct victim restitution payments made by RSA and asks that we modify the judgment to reflect that she and RSA are jointly and severally liable for the direct victim restitution order. The People state they have "no objection to any offset for restitution made by RSA," but argue defendant has forfeited the issue because she failed to raise it at the trial court during sentencing.[5] We will address the merits of defendant's claim. (*Blackburn, supra*, 72 Cal.App.4th at pp. 1533-1534 [a defendant does not forfeit their contention that victim restitution must be joint and several merely because they failed to object at the trial court].)

In a criminal case with multiple defendants, the trial court has the authority to order the codefendants to pay victim restitution jointly and severally. (*Blackburn, supra*, 72 Cal.App.4th at p. 1535.) Where a trial court is silent as to whether it has ordered joint and several victim restitution, appellate courts can modify the judgment where it appears this was what the trial court intended. For example, in *Blackburn*, one of the defendants encouraged the other to shoot and kill two teenagers, and then drove the getaway car. (*Id*. at p. 1524.) During sentencing, the trial court ordered each defendant to pay direct

---

[5]     The People further argue that the issue is not ripe because the record fails to indicate that the trial court actually ordered RSA to pay restitution to CalRecycle, or that RSA has made any payments. Although there is no evidence as to whether RSA has made any payments, we disagree with the People's suggestion that RSA was not ordered to pay restitution. During the September 3, 2021, hearing, RSA's counsel asked for "Immediate sentencing for the corporate entity." After explaining it was not going to sentence defendant that day, the court stated, "And on the sentencing for the corporate defendant . . . . [¶] . . . [¶] [RSA] will pay a fine of one million dollars. [¶] Will pay restitution to CalRecycle in the amount of 33 million dollars. [¶] And I believe that completes the conditions that the parties proposed to include at sentencing." RSA's counsel agreed the sentence accurately reflected the plea deal. As such, we interpret the record to mean that the trial court ordered RSA to pay restitution to CalRecycle and we will consider defendant's contentions.

victim restitution of approximately $7,600. (*Id*. at p. 1533.) On appeal, the defendants argued this was in error and would result in unjust enrichment. The appellate court agreed and modified the judgment accordingly, noting that it was "glaringly obvious" that the trial court was ordering the defendants to pay direct victim restitution jointly and severally. (*Id*. at p. 1535.) The court further noted that each defendant was entitled to a credit for any actual payments by the other. (*Ibid*.)

Although the amounts imposed on RSA and defendant were different, the losses were a result of the same fraud. Defendant argues that just as in *Blackburn*, the court must have intended the victim restitution to be joint and several and she asks us to make it so. In an abundance of caution, we will modify the judgment against defendant to state that the direct victim restitution ordered is joint and several. (See *Blackburn, supra*, 72 Cal.App.4th at pp. 1535-1536.)

## DISPOSITION

The judgment is modified to state that defendant is jointly and severally liable for the direct victim restitution. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment in accordance with this opinion and to forward a certified copy to the Department of Corrections and Rehabilitation.

/s/
EARL, P. J.

We concur:

/s/
MAURO, J.

/s/
KRAUSE, J.